# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 22, 2010

No. 09-30255

Lyle W. Cayce
Clerk

DON KEMP,

Plaintiff-Appellant,

v.

ERIC H. HOLDER, JR., UNITED STATES DEPARTMENT OF JUSTICE; A
K A L SECURITY, INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Louisiana, Monroe Div.

Before KING, BARKSDALE, and ELROD, Circuit Judges.

PER CURIAM:

Appellant Don A. Kemp appeals the district court's grant of summary judgment in favor of appellees on his claims for violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") arising from the termination of employment as a federal court security officer. Specifically, the district court held that Kemp failed to show a genuine issue of material fact regarding whether he has a "disability," as that term is defined under the ADA. Finding no error, we affirm.

No. 09-30255

**I.**

Appellant Don A. Kemp was discharged from his position as a court security officer ("CSO") with the United States Marshals Service ("USMS") after failing to meet the minimum unaided hearing requirement established for CSOs. Kemp, who has worked in the military and in law enforcement for over thirty years, began wearing a hearing aid in the early 1980s and added a second aid in 1989. It is undisputed that he has no problems hearing so long as he wears his aids. In 2000, while working as a police officer, Kemp inquired about a position as a CSO with AKAL Security, Inc. ("AKAL"), a private firm that contracts with USMS to provide security at a federal courthouse in Louisiana. When he applied for the position, Kemp informed AKAL that he wore hearing aids to compensate for his hearing loss, but AKAL did not indicate that this circumstance would cause any problems. AKAL later offered Kemp a job as a CSO contingent upon his successful passage of a medical examination required by USMS for all CSOs.

Kemp began working at the courthouse in February 2001 after undergoing an initial medical examination. Shortly thereafter, USMS notified him that the results of that exam indicated that his unaided hearing did not meet the minimum standard for the CSO position. Kemp underwent further testing in April at USMS's direction, but USMS regulations prohibited him from using his hearing aids during the tests. In July 2001, USMS informed AKAL that Kemp did not meet USMS medical qualifications for minimum unaided hearing and that his credentials as a CSO would be immediately revoked on that basis. AKAL consequently terminated Kemp, but it assisted him in appealing the disqualification decision, writing a letter to USMS requesting a reconsideration of the decision to revoke Kemp's credentials and seeking confirmation that his medical condition had been individually assessed. Despite those efforts, USMS did not reinstate his credentials.

No.  09-30255

Following his termination, Kemp filed suit against the defendants alleging violations of the ADA, the RA, and Louisiana anti-discrimination law.  He also claimed that he had been terminated in violation of his equal protection and due process rights.  The district court granted AKAL's summary judgment motion on all claims in November 2008, and it entered summary judgment in favor of the government on all claims in March 2009.  Kemp appeals the grants of summary judgment as to his ADA and RA claims only.  We have jurisdiction under 28 U.S.C. § 1291.

## II.

This court reviews a district court's grant of summary judgment *de novo*. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 386 (5th Cir. 2007). Summary judgment is appropriate when "the discovery and disclosure materials on file[] and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009).  "A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citation omitted).  This court must take all the facts and evidence in the light most favorable to Kemp, the non-moving party.  *Breaux*, 562 F.3d at 364.

## III.

Kemp argues that by terminating his employment due to his failure to meet USMS's established unaided hearing requirement, AKAL violated the ADA, and USMS violated the RA. Both of these statutes prohibit employment discrimination against qualified individuals with disabilities, but the statutes govern different entities: the ADA applies only to public entities, including

private employers, 42 U.S.C. § 12131(1), whereas the RA prohibits discrimination in federally-funded programs and activities, 29 U.S.C. § 794(a). The RA and the ADA are judged under the same legal standards, and the same remedies are available under both Acts. *See Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) ("The language in the ADA generally tracks the language set forth in the RA," and "[j]urisprudence interpreting either section is applicable to both."). Likewise, the relevant definition of disability set forth in the ADA is applicable to claims made under the RA. *See Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725 n.4 (5th Cir. 1995) (noting that the ADA's definition of a disability is "substantially equivalent" to the RA's definition).

The ADA provides that no covered employer shall "discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). To prevail on his ADA and RA claims, Kemp must establish that (1) he is disabled within the meaning of the ADA, (2) he is qualified and able to perform the essential functions of his job, and (3) his employer fired him because of his disability. *See Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999). The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A).

Kemp disputes the district court's holding that he failed to meet the "threshold requirement" of showing that he is disabled under the terms of the ADA. *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996). We consider whether he has raised a genuine issue of material fact as to whether

No. 09-30255

he is disabled as defined by the ADA by showing either that he has a physical impairment that substantially limited one or more of his major life activities or that AKAL and USMS regarded him as having such an impairment.

A.

Kemp first challenges the district court's conclusion that, because his hearing impairment is not substantially limiting when it is mitigated through Kemp's use of his electronic hearing aid, he did not raise a genuine issue of material fact regarding whether he had "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(a). In reaching this holding, the district court relied on the Supreme Court's decisions in *Sutton v. United Air Lines, Inc.* and *Murphy v. United Parcel Services, Inc.*, which held that courts must take into account the benefit of any impairment-mitigating devices that the plaintiff uses in determining whether he is disabled within the meaning of the ADA. *See Sutton*, 527 U.S. 471, 482 (1999) ("[I]f a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the [ADA]."), *superseded by statute*, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553; *Murphy,* 527 U.S. 516, 521 (1999) (holding that the "determination of [a person's] disability is made with reference to the mitigating measures he employs."). Kemp contends that the district court's reliance on these cases is misplaced because the ADA Amendments Act of 2008 ("ADAAA") retroactively applies to overrule these decisions and permits ADA-defined disability to be discerned without regard to the mitigating effects of his hearing aids.

No. 09-30255

According to Kemp, the ADAAA was enacted specifically for the purpose of remedying the catch-22 created by the *Sutton* decision in which an employer may evaluate an employee's capabilities without regard to mitigating devices, but the use of such devices is nevertheless considered when the court determines whether that employee is "disabled" under the terms of the ADA. Kemp is correct that the ADAAA sought to supersede *Sutton*. The "Findings and Purposes" section of the Act explained that Congress considered "the holdings of the Supreme Court in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) and its companion cases [to] have narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect." ADAAA, sec. 2(a)(4). The ADAAA went on to explicitly overrule "the requirement enunciated by the Supreme Court in *Sutton* . . . and its companion cases that whether an impairment substantially limits a major life activity is to be determined with reference to the ameliorative effects of mitigating measures," sec. 2(b)(3), and amended the ADA to mandate that the "determination of whether an impairment substantially limits a major life activity . . . be made without regard to the ameliorative effects of mitigating measures such as— . . . implantable hearing devices," ADAAA, sec. 4(a), §(4)(E)(I).

Kemp concedes that he filed his lawsuit before the ADAAA became effective, but he urges us to find that the ADAAA may be applied retroactively such that we may consider whether Kemp was disabled in a major life activity without regard to the mitigating effects of his hearing aids. However, Kemp relegated this argument to a footnote in his brief, and he has provided no support for his contention that the ADAAA could be applied in such a manner. Regardless, his argument is foreclosed by our decision in *Carmona v. Southwest Airlines*, in which we declined to "find that Congress intended the ADAAA to apply retroactively." 604 F.3d 848, 857 (5th Cir. 2010) (citing *EEOC v. Argo*

6

*Distribution, LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009)). Thus, even though Kemp's claim might fare differently if the ADAAA applied, we are bound to follow *Sutton* and evaluate whether his impairment constitutes a disability when taking into account the benefit imparted by his hearing aids. *See Sutton*, 527 U.S. at 482. Kemp readily admits that he is not substantially limited in any life activity when he wears his hearing aids, so we find no error in the district court's conclusion that he does not have a "disability" within the meaning of 42 U.S.C. § 12102(1)(A).[1]

## B.

Kemp also disputes the district court's conclusion that he failed to raise a genuine issue of material fact regarding whether he is "regarded as having" an impairment that substantially limits a major life activity. 42 U.S.C. § 12102(1)(C). The ADA's definition of "disability" permits suits "by plaintiffs who, though not actually disabled per § 12102(2)(A), are nonetheless 'regarded as having such an impairment.'" *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 508 (5th Cir. 2003) (quoting 42 U.S.C. § 12102(2)(C)). To meet this standard, a plaintiff must show either that "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton*, 527 U.S. at 489. However, both of these showings require

---

[1] Kemp alternatively argues that, even assuming that *Sutton* governs his claim, *Sutton* does not "exempt from liability" an employer that bans the use of a mitigating device in determining whether an employee meets occupation requirements. We disagree. The ADA prohibits discrimination only against those individuals who can show that they are "disabled," as that term is defined in the ADA. *See Rogers*, 87 F.3d at 758. Where Kemp has not met this "threshold requirement," the ADA provides no basis for liability for actions taken by his employer. *See id.* (explaining that the ADA prohibits discrimination "against a qualified individual with a disability" as that term is defined in the ADA, and that the establishment of such a disability is a prerequisite for relief (citation and internal quotation marks omitted)).

that the plaintiff demonstrate that the employer actually "entertain[ed] misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.* Kemp urges us to find that the district court's grant of summary judgment was improper because AKAL and USMS held broad misconceptions regarding his limitations in the major life activities of hearing and working, but we agree that he has produced no evidence in support of this claim.

We first consider Kemp's argument that he produced evidence that AKAL and USMS regarded him to be substantially limited in the life activity of hearing, and that he was ultimately terminated based on this perception. To establish that he was fired as a result of a perceived "substantial limitation," Kemp was required to produce evidence that his employer regarded him as being "[u]nable to perform a major life activity that the average person in the general population can perform; or [s]ignificantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195–96 (2002) (citation and internal quotation marks omitted; modifications in original), *superseded by statute*, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553.

Nothing in the record supports the notion that AKAL believed Kemp to be significantly restricted in his ability to hear when he was wearing his hearing aids, and the undisputed evidence suggests quite the opposite. AKAL was aware of his hearing impairment and his use of hearing aids when it initially offered him the CSO position. Even after he failed the unaided hearing test, AKAL continued to consider him fully capable of hearing on a functional basis, as it

wrote to USMS on his behalf to request a reconsideration of USMS's disqualification decision. Kemp likewise has failed to produce evidence suggesting that USMS considered him to be substantially limited in his ability to hear when he was wearing his hearing aids. He claims that USMS's requirement for unaided hearing is itself evidence of a perception that persons who require the use of hearing aids are "substantially limited" in their ability to hear, but we find that this requirement alone does not create a fact issue as to whether USMS perceived him as substantially limited in the life activity of hearing. Similarly, the Ninth Circuit has considered whether a "disqualification under USMS's hearing standards" constitutes evidence that USMS regarded a hearing-impaired CSO as substantially limited in her ability to hear and reached the same conclusion: a CSO's "failure to meet the USMS hearing standards does not raise a genuine issue of material fact that the USMS regarded her as disabled." *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1007 (9th Cir. 2007). Accordingly, we find no genuine issue of material fact regarding whether Kemp is substantially limited in the life activity of hearing.

His claim that AKAL and USMS regarded him as substantially limited in the major life activity of working fares no better. The Supreme Court has held that "[w]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that [Kemp] allege [he is] unable to work in a broad class of jobs." *Sutton*, 527 U.S. at 491. The breadth of the exclusion is significant, as the ADA endeavored to leave employers

> free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment—such as one's height, build, or singing voice—are preferable to others, just as it is free to decide that some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job.

No. 09-30255

*Id.* at 490–91. Thus, to prevail, Kemp must prove that he was regarded as "significantly restricted in the ability to perform either a *class of jobs or a broad range of jobs* in various classes as compared to the average person having comparable training skills and abilities." *Id.* at 491 (emphasis added).

Kemp has failed to submit evidence establishing that either AKAL or USMS believed him to be limited to such a great extent. As mentioned above, the record reflects that AKAL did not even consider him to be substantially limited in his ability to work as a CSO, as it urged USMS to reinstate him even after USMS determined that he could not meet the unaided hearing requirement.

Nor is there any evidence suggesting that USMS regarded him as being significantly restricted in his ability to perform other government and law enforcement jobs. Kemp posits that he submitted competent summary judgment evidence by showing that USMS utilizes an unaided hearing requirement—a requirement that he alleges eliminates him from eligibility for all government law enforcement jobs, not just the job of CSO, thereby substantially limiting him in his major life activity of working. USMS determined only that his unaided hearing deficiency disqualified him from the position of CSO, but "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 727 (5th Cir. 1995) (citation omitted). We find no basis to extrapolate the broader conclusion that he was incapable of performing any other law enforcement or government job from this single requirement, which is relevant only to whether a candidate is medically qualified to perform the functions of a CSO.[2] As Kemp provided no evidence raising genuine issue of material fact

---

[2] We disagree with Kemp's assertion that our decision in *Rodriguez v. ConAgra Grocery Products Co.*, requires us to hold that the unaided hearing requirement necessarily means Kemp's employer considered hm to be incapable of working in other law enforcement or

No. 09-30255

regarding whether AKAL or USMS believed him to be significantly limited in his ability to work a broad class of jobs, not simply in his ability to "perform the tasks associated with [his] specific job," he cannot establish "disability" under 42 U.S.C. §12102(1)(C). *Toyota Motor Mfg.,* 534 U.S. at 200–01.

Accordingly, we hold that Kemp has failed to produce evidence of "a physical or mental impairment that substantially limits one or more [of his] major life activities" or that he is "regarded as having such an impairment," and we affirm the district court's grant of summary judgment in favor of the appellees. *See* 42 U.S.C. § 12102(1)(A), (C). AFFIRMED.

---

government jobs. *See Rodriguez*, 436 F.3d 468 (5th Cir. 2006). In *Rodriguez,* we held that an employer regarded the plaintiff as significantly limited in the life activity of working where the employer found that the plaintiff's diabetes prohibited him from working a low-skill position. We explained that by considering the diabetic plaintiff to be "unfit for the entry-level Production Utility position—which is a job that. . . requires only the most basic skills and abilities, virtually any able-bodied person could perform it—it follows inescapably that ConAgra viewed Rodriguez as unfit to perform a wide range of jobs." *Rodriguez*, 436 F.3d at 477. *Rodriguez* is distinguishable, as the CSO position requires a significantly greater degree of skill and expertise than the entry level Production Utility position, and a determination that Kemp was unfit for the CSO position does not translate into a conclusion that he is unfit for a broad class of jobs.