# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-10270

United States Court of Appeals
Fifth Circuit

**FILED**

July 6, 2017

Lyle W. Cayce
Clerk

KRIS ARTHUR,

Plaintiff - Appellant

v.

BNSF RAILWAY COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:14-CV-1023

Before DAVIS, DENNIS, and SOUTHWICK, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:*

Kris Arthur filed this discrimination suit, alleging that BNSF Railway Company ("BNSF") refused to hire her because it regarded her as "disabled" within the meaning of the Americans with Disabilities Act ("ADA"). The district court granted BNSF's motion for summary judgment, holding that BNSF did not regard Arthur as disabled under the ADA. Because we find that Arthur failed to present an issue of material fact to support that BNSF

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-10270

regarded her as disabled, we AFFIRM the district court's grant of summary judgment.

## I.

In April 2006, Arthur applied for multiple positions at BNSF, eventually receiving a conditional job offer for the position of "Assistant Signalperson." For nearly 28 years, Arthur had worked as a telephone technician and lineman. An assistant signalperson is responsible for physical maintenance of train signal equipment, which was closely related to her prior employment. The assistant signalperson job involves substantial physical labor, including digging trenches, climbing and painting signal poles, and heavy lifting. It is a "heavy labor" position.

Arthur's job offer was conditioned on the successful completion of a pre-employment medical examination and a physical-capability test. Comprehensive Health Service ("CHS"), a medical services contractor for BNSF, coordinated BNSF's pre-employment medical-evaluation process, including a test assessing the strength and range of motion of prospective employees' shoulders and knees. Arthur initially failed this test, but after she retook it, CHS found that she met the "minimum physical demands of the essential functions of Assistant Signal[person]." Arthur also completed a physical examination and a medical questionnaire.

CHS submitted Arthur's medical information to Dr. Michael Jarrard, who was responsible for making medical-qualification decisions for BNSF candidates. The information transmitted to Jarrard included notes by CHS nurses and a BNSF "Occupational Assessment" form completed by the doctor who examined Arthur for CHS, as well as information from Arthur's orthopedic surgeon, primary care physician, and physical therapist. Arthur's medical records showed that after an injury in 2003, she began experiencing numbness in her right hand and pain in her right arm and neck. After having surgery in

No. 16-10270

August 2005 and completing physical therapy in early 2006, Arthur's right arm continued to "bother[] her." She began having "problems" with her left neck and shoulder after she did some manual labor around her farm and started a job performing telephone installation and maintenance. In March 2006, Arthur's orthopedic surgeon advised her to "cut back a bit on her activities with the right arm if at all possible to allow the ulnar nerve to resolve," and to return to the surgeon when necessary. Arthur's primary care physician filled out a questionnaire in September 2006 indicating that Arthur was being prescribed medication for ulnar neuropathy, muscle pain, and right tendonitis.

After her medical evaluations, on September 28, 2006, Jarrard notified Arthur via email that she was "[n]ot currently medically qualified for [the] safety sensitive Assistant Signalman position due to [the] potential[ly] significant risk associated with [her] chronic condition of right arm and cervical thoracic syndrome based on recent neck and arm pain episode." Jarrard continued that Arthur could be reconsidered for this position if she remained "free of recurrent symptoms or treatment for at least 6 months." He added that she "may be qualified for other BNSF positions at this time such as dispatcher, yard master, etc."

In response, Arthur submitted a note from her surgeon stating that her neck and shoulder pain was not chronic and that, to the best of his knowledge, she had been "pain and symptom free since [March 10, 2006]." Arthur also submitted a note from a physical therapist stating that she last treated Arthur in February 2006 and that Arthur had reported being pain-free since March 2006. BNSF did not reverse its decision.

After exhausting her administrative remedies, Arthur filed this lawsuit against BNSF alleging, among other things, that BNSF violated the ADA by denying her employment because it regarded her as disabled. BNSF moved for summary judgment. The district court granted BNSF's motion, finding that

3

No. 16-10270

Arthur did not put forth evidence to create a genuine issue of material fact as to whether BNSF considered her "disabled" under the ADA.

## II.

We review a district court's grant of summary judgment *de novo*.[1] Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] When reviewing a summary judgment decision, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor."[3]

## III.

The version of the ADA applicable to Arthur's case[4] makes it unlawful for an employer to discriminate with regard to hiring "a qualified individual with a disability because of the disability of such individual."[5] "The term 'disability' means . . . a physical or mental impairment that substantially limits one or more of the major life activities of such individual" or "being regarded as having such an impairment."[6] "The substantiality of a limitation is analyzed with regard to: (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact."[7]

---

[1] *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010).

[2] FED. R. CIV. P. 56(a).

[3] *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[4] The parties agree that because the events at issue took place before 2008, the statutory law and regulations in effect prior to the ADA Amendments Act of 2008 apply. *See Milton v. Tex. Dep't of Crim. Justice*, 707 F.3d 570, 573 n.2 (5th Cir. 2013) (ADA Amendments Act is not retroactive). Thus, the authority cited herein reflects the unamended law.

[5] 42 U.S.C. § 12112(a) (2006).

[6] *Id.* § 12102(2).

[7] *Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.*, 242 F.3d 610, 614 (5th Cir. 2001) (quoting *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995)).

No. 16-10270

To regard an individual as having a disability, an employer must "believe either that [the individual] has a substantially limiting impairment that [the individual] does not have or that [the individual] has a substantially limiting impairment when, in fact, the impairment is not so limiting."[8]  For purposes of defining disability, "major life activities" include reaching or lifting objects, as well as working.[9]  Arthur argues that BNSF regarded her as substantially limited with respect to the major life activities of lifting, reaching, and working.

**A. Lifting and Reaching**

First, we address Arthur's lifting and reaching claims.[10]  Arthur argues that BNSF's suggestion that she could be qualified for certain "light" jobs, coupled with BNSF's statement that Arthur was "eligible for other positions with BNSF that are less physically demanding," is sufficient evidence to create a genuine issue of material fact as to whether BNSF considered her substantially limited in her ability to lift and reach objects.

Viewing the evidence in the light most favorable to Arthur, we find that any suggestion that she was regarded as limited in her ability to lift and reach objects was temporary.  We have noted that "EEOC regulations provide that temporary, non-chronic impairments of short duration, with little or no permanent long-term impact are usually not disabilities."[11]  It is also true that "[t]he EEOC Compliance Manual indicates that an impairment that substantially limits or is expected to substantially limit a major life activity and whose 'duration is indefinite and unknowable or is expected to be at least

---

[8] *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999).

[9] *Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir. 1996) (citing *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 n.7 (5th Cir. 1995)).

[10] *See Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 n.10 (5th Cir. 1995) (citing 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630 app.) (noting that courts should address limitation on other life activities before limitation on working).

[11] *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1051 (5th Cir. 1998) (quoting *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996)).

several months' qualifies as a disability under the ADA."[12]   The six-month timeframe Jarrad imposed on Arthur's reevaluation was a temporary condition, not an indefinite or unknowable duration.  Jarrad testified in his deposition that he imposed this condition because Arthur "was temporarily not qualified because of the significant risk of an injury to herself or coworkers." Jarrad explained that the newest assistant signalperson starts at the lowest level of seniority and is given the heaviest duty jobs like "digging the ditches, moving the heavy components, working with very heavy batteries, . . . or . . . climbing ladders."  Because the signalpersons do not work in isolation, Jarrad said, if Arthur experienced a "flare-up" or a "sudden burst of pain," she could have dropped something and been a risk to herself and others.  Jarrad testified that he imposed the six-month waiting period due to her then-recent neck and arm pain, which could completely subside after that period of time.

Therefore, Arthur has not presented evidence that there is an issue of fact to demonstrate she was regarded as substantially limited in her ability to reach or lift objects because BNSF's decision not to hire her was a temporary one.  Therefore, she has not shown that she was regarded as disabled in this respect.

**B. Working**

Arthur also argues that the evidence shows a genuine issue of material fact as to whether BNSF considered her substantially limited in her ability to work because BNSF regarded her as only qualified to perform jobs classified as light-duty work, thereby excluding her from medium- and heavy-duty jobs.

An applicant is perceived as substantially limited in her ability to work if she is "regarded as 'significantly restricted in the ability to perform either a

---

[12] *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 618 (5th Cir. 2009) (quoting DURATION AND IMPACT OF IMPAIRMENT, EEOC COMPLIANCE MANUAL (2007) § 902.4(d)).

class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training skills and abilities.'"[13]  "A class of jobs includes 'jobs utilizing similar training, knowledge, skills or abilities, within that geographical area.'"[14]  Someone who cannot perform any heavy labor job would be substantially limited in her ability to work even if she was able to perform another class of labor.[15]

Arthur points to the email written by Jarrad that declared her not medically qualified for the assistant signalperson position, but did say that she "may be qualified for other BNSF positions at this time such as dispatcher, yard master, etc.," which are light-duty work jobs.  This statement, Arthur argues, amounts to BNSF regarding her as restricted from performing medium- and heavy-duty jobs.

We disagree.  The evidence demonstrates that BNSF only evaluated Arthur for the one position she was conditionally hired for, assistant signalperson, not *all* heavy-duty jobs.  The record is clear, Jarrad testified, "I only know what I was evaluating her for, which is what she was offered, which was the assistant signalperson position."  When pressed to give an opinion on whether Arthur was qualified for a track laborer position, another heavy-duty job, Jarrad said, after significant prodding and requests for speculation, that he "most likely" would have found Arthur not medically qualified at the time "because of the heavy nature of that job."  We are not persuaded that this statement is enough to create an issue of material fact.  Jarrad answered a hypothetical question and speculated as to his likely medical evaluation in his response.  We also find that Jarrad's suggestion via email that Arthur may be

---

[13] *Kemp*, 610 F.3d at 238 (quoting *Sutton*, 527 U.S. at 491) (emphasis omitted).

[14] *Bridges v. City of Bossier*, 92 F.3d 329, 334 (5th Cir. 1996) (quoting 29 C.F.R. § 1630.2(j)(3)(ii)(B)).

[15] 29 C.F.R. § 1630 app. § 1630.2(j).

qualified for other jobs that were light-duty work positions was merely a suggested list of other jobs with BNSF that Arthur might be qualified for. Once Arthur remained free of symptoms and treatment for six months she would be eligible to be reevaluated for the assistant signalperson position.

**IV.**

In sum, BNSF determined Arthur was medically not qualified for the position of assistant signalperson for a limited period of six months. After that period, she could be reevaluated for the position if she remained free of recurrent symptoms or treatment. This temporary medical disqualification from one position did not constitute an exclusion from all other medium- or heavy-duty jobs. Because Arthur did not raise an issue of material fact to demonstrate that BNSF regarded her as disabled under the ADA, the judgment of the district court is AFFIRMED.

No. 16-10270

JAMES L. DENNIS, Circuit Judge, dissenting in part:

Kris Arthur argues that BNSF Railway Company (BNSF) refused to hire her because it regarded her as "disabled" within the meaning of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. (2006), inasmuch as it considered her substantially limited in her ability to lift, reach, and work. Although I agree with the majority opinion's conclusion that Arthur has not established a material dispute of fact as to the reaching and lifting issue, I cannot agree that her claim fails because of the perceived duration of her injury. Furthermore, that BNSF only evaluated Arthur's ability to perform a single job is not dispositive, as our precedents make clear that we should consider the basis for the hiring decision. For these reasons, as explained in more detail below, I respectfully dissent from the judgment of the majority opinion as it relates to Arthur's perceived ability to work.

*

The majority holds that BNSF could not have considered Arthur substantially limited in her ability to lift or reach because her disqualification from the position of assistant signalperson was only temporary. After noting that "[t]he EEOC Compliance Manual indicates that an impairment that substantially limits or is expected to substantially limit a major life activity and whose 'duration is indefinite and unknowable or is expected to be at least several months' qualifies as a disability under the ADA," *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 618 (5th Cir. 2009) (quoting DURATION AND IMPACT OF IMPAIRMENT, EEOC COMPLIANCE MANUAL (2007) § 902.4(d)), the majority opinion states that "[t]he six-month timeframe [Dr. Michael] Jarrard imposed on Arthur's reevaluation was . . . not an indefinite or unknowable duration," Op. at 5–6. But Jarrard said that he intended to exclude Arthur from consideration for the position of assistant signalperson for

9

*at least* six months, through March of 2007, at which time he would reconsider her "if [she could] show a period of stability." Jarrard stated that he believed Arthur was being treated for chronic pain prior to his assessment and that he took into account that Arthur had not recovered from surgery within a "typical" time frame and that "she had done some heavier work" prior to a flare-up of her condition earlier that year. Arthur's medical records indicate that her injury and attendant pain began in 2003 and her pain persisted, at least intermittently, through 2006. We have held that where an individual experienced symptoms over the course of approximately eight months, and the prognosis for her relapsing-remitting condition was unclear, summary judgment dismissing the plaintiff's ADA claim was not appropriate. *See Chevron Phillips Chem. Co.*, 570 F.3d at 618–19. Thus, I do not believe that Arthur's perceived limitation was categorically too ephemeral to constitute a disability for purposes of the ADA.[1]

Nevertheless, I agree with the majority opinion's ultimate resolution of this issue because Arthur presents no competent evidence that BNSF considered her substantially limited in her ability to reach and lift. With respect to lifting, at best Arthur's evidence establishes that BNSF considered her limited in her ability to lift heavy objects, as this is one of the duties of the assistant signalperson. As a matter of law, a "restriction on heavy lifting . . . alone is insufficient for a reasonable jury to find a substantial

---

[1] The majority opinion appears to be influenced by BNSF's claim that it cannot have regarded Arthur as disabled because it considered her a safety risk. Under the ADA, an employer's qualification standards "may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace," 42 U.S.C. § 12113(b) (2006), but for purposes of this appeal, BNSF has expressly disavowed the argument that Arthur posed a "direct threat" to herself or others as an alternate basis for affirmance. Unfounded concerns about "safety, insurance, [or] liability" can be sufficient to support "regarded as" claims. *See* 29 C.F.R. § 1630, App. § 1630.2(l). Thus, whether Arthur presented a direct threat to herself or others should be irrelevant to our analysis.

limitation on a major life activity." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1120 (5th Cir. 1998); *see Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir. 1996) (restrictions on heavy lifting did not establish that plaintiff was regarded as having a disability because the inability to perform heavy lifting did not render him substantially limited in the major life activity of lifting). With respect to reaching, while BNSF considered her unqualified to perform the assistant signalperson position, there is no evidence that BNSF considered her unqualified because of her inability to reach; Jarrard specifically noted that BNSF did not find any "limitations in the motions of her joints." I therefore agree that Arthur has not created an issue of fact as to whether she was regarded as substantially limited in her ability to reach or lift objects.

The majority opinion next holds that Arthur has not created a material issue of fact as to whether BNSF regarded her as disabled inasmuch as it considered her substantially limited in her ability to work. I respectfully disagree. An employer does not regard an employee as disabled simply because it finds the employee incapable of satisfying the singular demands of a particular job. *See, e.g.*, *Kemp v. Holder*, 610 F.3d 231, 238 (5th Cir. 2010). However, it does not follow that BNSF cannot have regarded Arthur as substantially limited in her ability to work because it only disqualified her from a single position. We must consider evidence regarding the basis for the disqualification, not the mere fact of disqualification. In *Tullos v. City of Nassau Bay*, 137 F. App'x 638, 649 (5th Cir. 2005), we concluded based on an employer's belief that the plaintiff had impulse control and rage disorders that a "jury could reasonably infer" that the employer's perception of the plaintiff "precluded essentially any job involving interaction with others." Similarly, in *Deas v. River W., L.P.*, 152 F.3d 471, 481–82 & n.24 (5th Cir. 1998), we found that even though the plaintiff was only deemed unable to perform the specific

job of addiction technician at a hospital's substance abuse treatment unit, because the basis for her disqualification was her inability to maintain uninterrupted vigilance, the employer considered her unable to perform jobs that required "high levels of vigilance or uninterrupted awareness."

Here, there is evidence that the disqualification was broader than the assistant signalperson position. Jarrard testified that the decision to disqualify Arthur from the assistant signalperson position was based on his opinion that, in light of evidence that Arthur "had done some heavier work" before a flare-up of her condition, the "heavy demands" of the position "put [Arthur] at risk" of injury. Jarrard could not say whether his disqualification of Arthur was based on any "specific demands" of the assistant signalperson position, or his more general concerns about the "heavy physical demands" of the job. We cannot fairly assume at the summary judgment stage that his assessment was strictly limited to the assistant signalperson position: as noted by the majority opinion, Jarrard testified that he would likely have disqualified Arthur from another heavy labor position at BNSF based on the "heavy nature of that job." The majority opinion dismisses Jarrard's statement as "speculat[ion]" in response to "a hypothetical question." Op. at 7. Speculative or not, Jarrard's statement that he would not have cleared Arthur for another heavy labor position at BNSF due to its "heavy nature" reasonably supports an inference that his basis for disqualifying Arthur from the assistant signalperson position was broader than the singular demands of that particular position. Viewing the evidence in the light most favorable to Arthur, I believe that Jarrard's testimony raises a material dispute as to whether BNSF regarded Arthur as unable to perform any heavy labor position.

No. 16-10270

\*\*\*

For these reasons, I respectfully dissent from the majority opinion as it relates to Arthur's claim that she was substantially limited in her ability to work.