# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60366

United States Court of Appeals
Fifth Circuit

**FILED**

April 6, 2015

Lyle W. Cayce
Clerk

GAYLE MILLER MCMULLIN,

      Plaintiff - Appellant

v.

MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY; ALBERT SANTA
CRUZ, In his official capacity as Commissioner of the Mississippi
Department of Public Safety,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

Before JOLLY, WIENER, and CLEMENT, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this appeal from a summary judgment dismissing a complaint in a Title VII race-discrimination case, plaintiff, Lieutenant Gayle McMullin, presented evidence, which, if believed by a jury, would show a fumbling, bumbling case of determined efforts to deny a promotion to McMullin. Lieutenant McMullin alleges that the Mississippi Department of Public Safety ("the Department")[1] failed to promote her to the position of Training Director

---

[1] Lieutenant McMullin also sued the Department's commissioner, Albert Santa Cruz, in his official capacity.

No. 14-60366

and instead promoted a less-qualified officer of lower rank to fill the position, based on race.

The district court granted summary judgment in favor of the Department, finding that Lieutenant McMullin failed to establish a prima facie case of race-based discrimination. Because the district court erred in granting summary judgment, we VACATE the judgment, and we REMAND for trial or other proceedings not inconsistent with this opinion.

## I. Background

### A.  Overview of Lieutenant McMullin's Employment History

Plaintiff McMullin started her employment with the Department as a sworn officer in April 1987. For the next several years, she served on-and-off as a training officer in several patrol schools[2] at the Mississippi Highway Patrol's Training Division ("HP Training Division"). In that capacity, McMullin trained cadets in various disciplines such as driving, firearms, and physical fitness. In 2000, McMullin was transferred to the HP Training Division full time. In this role, McMullin provided the training listed above as well as training in disciplines such as drug interdiction and K-9 patrol. In 2005, while still working in the HP Training Division, McMullin was promoted to the rank of lieutenant, a rank she retained at the time of this appeal.[3]

In 2006, Lieutenant McMullin was assigned to be a full-time training coordinator and instructor for the Mississippi Law Enforcement Officers

---

[2] From the evidence, it appears that patrol schools provide the initial training that candidates need before being sworn in as state troopers.

[3] The relevant hierarchy in the Highway Patrol (high to low) is Captain; Lieutenant; Master Sergeant.

2

Training Academy ("MS Academy").[4]  At the MS Academy, Lieutenant McMullin coordinated state training for law enforcement in all state entities, including sheriffs, deputies, game and fisheries officers, chiefs of police, and highway patrolmen.  In addition to her role as coordinator, Lieutenant McMullin also served as an instructor at the MS Academy.

In April 2012, Lieutenant McMullin was transferred from the MS Academy to the Department's headquarters and was assigned the role of Communications Coordinator for the training of dispatchers.

## B.   Lieutenant McMullin's Application for the Director's Position

From at least mid-2011 until early 2012,[5] Captain Chris Gillard served as Director of the HP Training Division.  In February 2012, Captain Gillard vacated that position and received a promotional transfer to another position within the Department.  Shortly thereafter, Lieutenant McMullin heard by word of mouth that Captain Gillard had vacated the Director's position. Because she never received any official notice that the Director's position was open, Lieutenant McMullin called Captain Gillard to verify that the he had vacated the position and that the position would be filled.  Captain Gillard confirmed these details.

The standard procedure for applying for an open position within the Department was to send a letter of interest after learning of an available position.   To that end, Lieutenant McMullin drafted letters to the Department's Commissioner (Albert Santa Cruz), the Department's Human Resources Legal Liaison (Natalie Holmes), and the Director of the Highway

---

[4] Unlike the HP Training Division, which deals only with troopers and cadets for the Mississippi Highway Patrol, the MS Academy provides basic training classes for a multiplicity of Mississippi entities, including the Highway Patrol, Department of Transportation, Department of Wildlife, sheriffs, and local police.

[5] The record does not establish when Captain Gillard began as Director.

No. 14-60366

Patrol (Colonel Donnell Berry), stating her interest in applying to the vacant position. Each letter states:

> Ref: Training Director for MHP
>
> I have been informed that Captain Gillard has transferred to Driver Services and I am writing this letter to inform you that I am interested in the Captains [sic] position for the Training Division. Any consideration would be greatly appreciated.

On February 27, 2012, Lieutenant McMullin delivered these letters to Colonel Berry's assistant who said that she would deliver the letters to their intended recipients. Colonel Berry received Lieutenant McMullin's letter shortly after she delivered it. He left the letter on his desk, however, and took no action because the Director's position had not yet been "posted." It was Colonel Berry's policy to ignore letters like Lieutenant McMullin's "until the position is posted."

Approximately three weeks later, on March 19, 2012, Colonel Berry told Lieutenant McMullin she would be reassigned, effective April 1, from the MS Academy to the Department's headquarters where she would serve as the Communications Coordinator for the training of dispatchers.

## C.   Position Open Notice

On March 26, 2012, a week after informing Lieutenant McMullin of her transfer, Colonel Berry directed human resources to disseminate a "Position Open Notice" ("Notice") for the Director's job vacated by Captain Gillard. That Notice states that it is "To: All Sworn Officers" and says that the Department "is seeking sworn personnel for a LE-Director/Training, which carries the rank of Lieutenant, assigned to Headquarters." The Notice also provides the necessary qualifications, references the application process, and states that applications would be accepted for five days, from March 26 to March 30.

4

No. 14-60366

Both Lieutenant McMullin and Master Sergeant Marshall Pack (the person who was awarded the job at issue in this case) stated that the Department typically sends out a position open notice, such as the Notice described above, via email, mail to one's personal residence, personal phone calls, and messages over the dispatch system. Although he could not recall precisely how he received the Notice at issue here, Master Sergeant Pack (the person ultimately hired) believes that the Notice was sent to him by email, by mail to his home address, or both. Lieutenant McMullin received no such personalized notice.

In the requests for admissions, the Department stated that the Notice "was faxed to all troop dispatch centers for dissemination to all troopers including McMullin." Importantly, however, the fax did not reach several locations. A fax confirmation sheet (stamped March 26, 2012 at 9:40 AM) shows that there was "no" transmission and/or "incomplete" transmission of the Notice to seven locations, including the MS Academy where Lieutenant McMullin was working.[6]

The evidence also shows that the Department's merits promotion system requires that a position open notice be sent to Department staff by fax to all Department fax numbers; email notice to all Department staff; posting on the Department website and the State Personnel Board website; and notice on the human resources bulletin board. The Department did not follow these notification requirements; nor did it follow its general practice of providing notice via email, mail to one's personal residence, personal phone calls, and the dispatch system. As noted above, the attempt to fax the Notice failed. Further,

---

[6] The transmission also failed to reach trooper locations in Starkville, Hattiesburg, and Gulfport. Master Sergeant Pack's letter of interest states that he was then working for the MS Bureau of Investigation, a location that received the faxed Notice. The only other applicant, James Walker, was then working for Troop C, another location that received the faxed Notice.

5

there is no evidence that the Notice was emailed to qualified personnel, such as Lieutenant McMullin; mailed to Lieutenant McMullin's personal address; communicated over the phone; uploaded to the Department website; or transmitted via the dispatch system. Lieutenant McMullin never received the Notice.

A jury, especially in view of the evidence that follows, could determine that these facts constituted the first steps to deny the promotion to Lieutenant McMullin.

## D.   Master Sergeant Pack Selected as Director

On March 27, Master Sergeant Pack, a state trooper, sent a letter to Colonel Berry "requesting the opportunity to interview" for the position vacated by Captain Gillard. Two days later, another applicant sent a letter requesting an interview. On April 10, an Interview Board interviewed applicants for the open Director position. The Department's testimony and other evidence regarding the interview process is murky and contradictory, leaving it unknown who was interviewed, who conducted the interviews, and what position was being filled.[7]

At the very least, the evidence shows that Master Sergeant Pack was interviewed and Lieutenant McMullin was not. On April 10, 2012, the same day as Master Sergeant Pack's interview, Colonel Berry told Master Sergeant Pack that he would "be promoted [on May 1] to the position of LE-

---

[7] For example, the composition of the Interview Board is unclear, as the record contains completed interview forms from personnel not known to be on the Interview Board. And, there is a discrepancy as to how many candidates were interviewed. Captain Gillard stated that one candidate was interviewed, but the interview forms from the other Interview Board members state that "interviews," plural, were conducted. There are also differing accounts of the position to be filled: one interview form refers to "Lieutenant-Driver Services/Training" and "Lieutenant-Training"; the other interview forms refer to "LE-Branch Director-Training, Lieutenant."

Director/Training," which carries the rank of lieutenant. As a result of this decision, Master Sergeant Pack both received the Director's job and was promoted from master sergeant to lieutenant.

Master Sergeant Pack is black; Colonel Berry is black; and Lieutenant McMullin is white. A jury could infer that Colonel Berry's conduct evinced a connivance to favor Master Sergeant Pack over Lieutenant McMullin based on race.

## E.   Qualifications Comparison

At the time of Master Sergeant Pack's promotion, Lieutenant McMullin had twenty-five years of experience with the Department and had been a full-time, training coordinator and instructor for the MS Academy for six years (2006 to March 2012). Lieutenant McMullin spent approximately half of her career with the Department in training, including serving as a training officer and counselor in twelve patrol schools. Lieutenant McMullin had never been disciplined by the Department. The Department does not dispute that Lieutenant McMullin was qualified for the Director's position.

Master Sergeant Pack, by contrast, had a lower rank, seven fewer years of service with the Department, and served as training officer and counselor in four or five patrol schools. And, he had been fired twice while working for the Department and assigned to the Mississippi Bureau of Narcotics. Master Sergeant Pack was terminated first in October 1995 for having sex with a confidential informant. He was later reinstated because other officers who engaged in similar activity had not been terminated. He was again terminated in December 2001 for (1) seizing cash from a potential target without accounting for the seizure, (2) participating in sexually explicit behavior during a vacation in Florida, and (3) observing but not reporting illegal drug activity during that vacation. Subsequently, Master Sergeant Pack and the

Department entered into a settlement which rescinded his second termination, restored him to the same rank and grade, and gave him full benefits and back pay.

Colonel Berry stated that he did not know that Master Sergeant Pack had been fired before he promoted him to the Director position, but Colonel Berry added that the prior terminations and misconduct would not have affected his decision to promote Master Sergeant Pack.

A jury could conclude that the promotion of Master Sergeant Pack, with his dubious record of service and Colonel Berry's stated failure to review the record of Master Sergeant Pack before his promotion, was evidence of discriminatory motive based on race.

## F.    Rank of the Director's Position

The Director's position at issue in this case had been filled by a captain for at least twenty-five years prior to Captain Gillard's departure and the dissemination of the Position Open Notice in March 2012.  Colonel Berry, however, circulated a notice to fill the instant vacancy with a lieutenant instead of a captain.  The Department gave the position to Master Sergeant Pack, after promoting him to the rank of lieutenant.

When asked why he sought a lieutenant instead of a captain to fill the vacancy, Colonel Berry provided vague answers throughout his deposition, including "Start and work our way from the bottom up" and "Start with the lieutenant and work our way up to the captain."[8]  Then, Colonel Berry hinted that perhaps there were, in fact, two vacant positions:  one captain position and one lieutenant position.

---

[8] Other similar responses:  "Start work out with filling lieutenant, then the captain slot next"; "I wanted to fill the lieutenant and then work my way up to the captain"; "To work my way up from a lieutenant to captain"; and "Work from the bottom and work to the top."

Q: So as director of the Mississippi Highway Patrol, you changed the rank of the Training Director from captain to lieutenant?

A: *No.    In training, it's always been a captain and a lieutenant.    It's going to start at the top and fill the lieutenant slot, then go to the captain's slot.*

Q: The captain's slot is still open?

A: *Yeah.   The Director of . . . training has been in the captain slot.*

Q: And, you're going to fill the captain's slot at some point?

A: *Yes, sir.*

Colonel Berry said he would fill the "captain's slot" when this lawsuit was resolved.   But, even after making these statements, Colonel Berry was unable to confirm his suggestions that (1) there were two Director positions and (2) the "captain slot" remained unfilled.  For instance, Colonel Berry stated that Master Sergeant Pack (the person ultimately promoted to the rank of lieutenant and then appointed as Captain Gillard's replacement) was the "acting" Director because he was not a captain:  "The lieutenant is the *acting* director over the Training Department."  Emphasis added.  But, Colonel Berry acknowledged that no order stated that Master Sergeant Pack was the "acting" Director over the HP Training Division, and he vacillated when asked whether Master Sergeant Pack was "Director" or "Acting Director," even stating that the Human Resources Director was not informed that Master Sergeant Pack was an "acting" Director.

Eventually, Colonel Berry changed his storyline and said that the *single* Director position was not vacant but was being "held by a lieutenant" and that Master Sergeant Pack is the "Director of training."   Later in his deposition, Colonel Berry said that the Department "will make [the Director's position] a captain."  He agreed that the position "is *designated* as a captain's position but

is currently *filled* by a lieutenant" and added that the position is "*held* by a lieutenant until we *fill* the captain's position." Emphases added. Colonel Berry also agreed that the "rank of training [D]irector was not changed but was *filled* by lieutenant instead of captain" and added, "It's being *held* by a lieutenant instead of a captain right now." Emphases added.

A jury could conclude that Colonel Berry's testimony reflected manipulative reasoning to obfuscate the actual facts of the promotion of Master Sergeant Pack.

## II. Procedural History

### A.    EEOC Charge & Response

One month after Master Sergeant Pack's promotion, Lieutenant McMullin filed a charge of discrimination against the Department with the EEOC. Lieutenant McMullin alleged that the Department failed to promote her to the Director position at the rank of captain because of her race.

The EEOC requested that the Department respond to Lieutenant McMullin's charge of discrimination. The Department provided the following response to the EEOC:

> [Lieutenant McMullin] did not seek a promotion. The position of which [McMullin] mentions is that of the same rank as she currently holds. However, [McMullin] had the opportunity to ask for a "lateral transfer," which would have afforded her the ability to work in the area of Training if she had desired [to] do so.
>
> The [Department] did not recruit, interview, or promote for a position of "Captain" within the area of Training. It did however recruit, interview, and promote for a position of "Lieutenant" and a qualified sworn personnel member was selected from the two (2) applicants who applied for the position.

No. 14-60366

Before the EEOC completed its investigation, Lieutenant McMullin requested and received a right-to-sue letter.

## B.   District Court Proceedings

Lieutenant McMullin filed this Title VII action in the district court, alleging that the Department's failure to promote her to the Director position constituted race-based discrimination.  After discovery, the Department moved for summary judgment.  The district court dismissed Lieutenant McMullin's arguments against the Department's motion, calling her arguments "simple conjecture" that were "laden with conspiracy-oriented details" such as Colonel Berry's and Human Resources Director Holmes's race (black), "as if to show that [race] has a connection to [Lieutenant McMullin's claim]."   Then, the district court concluded that Lieutenant McMullin failed to establish a prima facie case of race-based discrimination because the summary-judgment evidence did not establish any factual support:  (1) that Lieutenant McMullin applied for the job, (2) that she was rejected, or (3) that the position was filled by a non-white applicant.  The district court was clearly and plainly incorrect, on each point, to say that there was no evidentiary support.

### III. Discussion[9]

This failure-to-promote case presents no *direct* evidence that the Department denied Lieutenant McMullin the promotion because she was white.  That is to say, the defendants expressed no overt, race-based hostility or animus toward Lieutenant McMullin; nor did they express any overt, race-based support in favor of Master Sergeant Pack.  There is, however, more than ample circumstantial evidence to create issues of material facts from which a

---

[9] This Court reviews the district court's grant of summary judgment de novo.  *Jackson v. Watkins*, 619 F.3d 463, 465 (5th Cir. 2010).

jury could find that Lieutenant McMullin was a victim of racial discrimination. In the absence of such direct evidence, the familiar *McDonnell Douglas* burden-shifting framework applies: Lieutenant McMullin must first demonstrate a prima facie case of discrimination; the Department then must articulate a legitimate, non-discriminatory reason for its decision not to promote Lieutenant McMullin; and, if the Department meets its burden of production, Lieutenant McMullin must then offer sufficient evidence to create a genuine issue of material fact that the Department's reason is a pretext for race-based discrimination. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411-12 (5th Cir. 2007).[10]

## A.   Prima Facie Case

In moving for summary judgment, the Department argued that Lieutenant McMullin had not established a prima facie case of discrimination.

In a failure-to-promote case such as this, a plaintiff establishes a prima facie case of race-based discrimination by demonstrating that (1) she is a member of the protected class; (2) she sought and was qualified for a position for which applicants were being sought; (3) she was rejected for the position; (4) the employer hired a person outside of the plaintiff's protected class or continued to seek applicants with the plaintiff's qualifications. *Williams-Boldware v. Denton Cnty., Tex.*, 741 F.3d 635, 643 (5th Cir.), *cert. denied*, 135 S. Ct. 106 (2014); *Burrell*, 482 F.3d at 412.

No one questions that Lieutenant McMullin is a member of a protected class: she is white. There is no dispute that Lieutenant McMullin was qualified for the Director position: she has spent half of her twenty-five-year

---

[10] Based on the summary-judgment evidence and argument, this is not a motivating-factor case. *See Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411-12 (5th Cir. 2007) (providing the motivating-factor analysis).

Department career in Training. Nor is there a question that Master Sergeant Pack is outside of Lieutenant McMullin's protected class: he is non-white. There is sharp disagreement, however, as to whether Lieutenant McMullin applied for the Director's position and, relatedly, whether she was ever rejected for the position.

To answer those questions, we must first address the confusion created by Colonel Berry's testimony regarding whether there is one Director's position or two Director's positions (one captain-Director and one lieutenant-Director). As an initial matter, at no time does the Department clearly or unequivocally state that there are two positions. And, the evidence, viewed in Lieutenant McMullin's favor, supports the inference that there is (and always has been) a single Director position in the HP Training Division. Moreover, even if we assume a non-fact, that is that there were two Director positions of different ranks, the record lacks evidence that there was a vacancy in the "lieutenant" position. The only vacancy that can be inferred from the record—when viewing the record in favor of Lieutenant McMullin—is the opening in the *captain*-level Director's position that was created when Captain Gillard was promoted to a new position within the Department. Even Master Sergeant Pack (who was promoted to the Director position) assumed that he was applying for "the job" vacated by Captain Gillard. If Master Sergeant Pack was promoted to some other job, he does not seem to know it.

Taking the evidence and reasonable inferences in Lieutenant McMullin's favor, a factfinder could find that (1) there was one job opening; (2) Lieutenant McMullin learned of that vacancy despite the Department's failure to provide her access to the Position Open Notice; (3) Lieutenant McMullin applied for that open position; (4) Colonel Berry received Lieutenant McMullin's application and knew that Lieutenant McMullin was qualified for the job; and (5) Colonel Berry knew that the position was vacant, so the letter had meaning

to him—that is, he understood that Lieutenant McMullin was applying for the Director's position vacated by Captain Gillard. A factfinder could also reasonably infer that (6) Colonel Berry took no action initially with respect to Lieutenant McMullin's application because the Director's position had not yet been "posted," but (7) for some reason, Colonel Berry continued to ignore Lieutenant McMullin's application after the Position Open Notice was released despite his policy to ignore early arriving applications only "*until* the position is posted." Emphasis added. Finally, a factfinder reasonably could infer that (8) Colonel Berry intentionally failed to schedule Lieutenant McMullin for an interview and, instead, (9) interviewed Master Sergeant Pack and then (10) promoted him to the lieutenant rank[11] before (11) appointing him as Director. Viewed in Lieutenant McMullin's favor, as we must in reviewing the Department's summary-judgment motion, these facts and reasonable inferences could support the conclusion that Lieutenant McMullin applied for the Director's position and was rejected.[12] These are, as we have said, issues for a factfinder to resolve, as is the ultimate question of whether the Department discriminated against Lieutenant McMullin based on race in violation of Title VII.

---

[11] As master sergeant, Pack was not eligible to become captain (he had to first serve as a lieutenant). Lieutenant McMullin, by virtue of her higher rank, was eligible to become captain at any time.

[12] The Department makes the additional argument that Lieutenant McMullin wanted to be elevated to the rank of captain and, therefore, did not apply for (and would not accept) the Director job if she had to remain a lieutenant. This fact-based argument does not view the record in Lieutenant McMullin's favor. Reading the record in Lieutenant McMullin's favor, Lieutenant McMullin wanted Captain Gillard's vacated job—whatever the rank. She assumed it would be a captain-level job because it had been for at least twenty-five years (almost her entire tenure with the Department), but that was secondary to her desire to be elevated to the Director's position.

## B. Employer's Proffered Reason

Given that the summary-judgment evidence demonstrates a prima facie case of race-based discrimination, the Department had the burden to produce or point to evidence of a legitimate, non-discriminatory reason for its decision to not promote Lieutenant McMullin. *See Burrell*, 482 F.3d at 411-12.

In its summary-judgment brief in the district court and its brief on appeal, the Department perfunctorily states that it "has provided a legitimate, non-discriminatory reason for its decision to promote [Master Sergeant] Pack." Beyond this statement, the Department provides no discussion, explanation, or elaboration of its purported legitimate reason(s) for its promotion decision. This will not do. The Department's burden was light. It needed only to produce or point to evidence of a non-race-based reason for its employment decision; yet, it wholly failed to do this. As such, we are left with Lieutenant McMullin's prima facie case, which, as discussed above, is sufficient to withstand summary judgment and take this case to a factfinder.[13]

## IV. Conclusion

The district court erred in granting summary judgment in the Department's favor because (1) the summary-judgment evidence, viewed in Lieutenant McMullin's favor, establishes a prima facie case of race-based discrimination and (2) the Department failed to proffer a legitimate, non-

---

[13] Perhaps the Department means to suggest that the reason for its employment decision was that Lieutenant McMullin did not apply for the job and/or was not rejected from it. However, those issues go to Lieutenant McMullin's prima facie case, which are discussed thoroughly above. The Department had the burden to articulate a reason, supported by record evidence, for its decision to hire Master Sergeant Pack rather than Lieutenant McMullin. The Department failed to even attempt to do this. And, because the Department did not provide a legitimate, nondiscriminatory reason for promoting Master Sergeant Pack rather than Lieutenant McMullin, we do not reach the pretext portion of the *McDonnell Douglas* framework.

15

discriminatory reason for its promotion decision.  We VACATE the district court's summary-judgment order and REMAND the case for trial or other proceedings not inconsistent with this opinion.

VACATED and REMANDED.