# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60588

United States Court of Appeals
Fifth Circuit

**FILED**

October 17, 2017

Lyle W. Cayce
Clerk

STACEY ROY,

> Plaintiff - Appellant

v.

DOCTOR KAREN CREWS, In her individual capacity;
UNIVERSITY MEDICAL CENTER; JOHN DOES 1-5,

> Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:14-CV-24

Before STEWART, Chief Judge, and JONES and CLEMENT, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant, Stacey Roy, challenges the district court's grant of summary judgment dismissing her allegations that University of Mississippi Medical Center discriminated against her based on her race and gender and retaliated against her for engaging in activity protected under Title VII. Because the record lacks sufficient evidence to create genuine issues of material fact on any of Roy's claims, we AFFIRM the district court's judgment.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-60588

## BACKGROUND

Stacey Roy, a black female, began working for the University of Mississippi Medical Center ("UMMC") in January 2007 as a Neurology Researcher. Roy had previously worked for three months as a mental health therapist at an alcohol treatment center. In May 2008, she became a certified tobacco treatment specialist and transferred to UMMC's ACT Center for Tobacco Treatment, Education, and Research. Roy was supervised by Dr. Karen Crews, the ACT Center's white female Director, Dr. Thomas Payne, the white male Associate Director, and Dr. Monica Sutton, the black female Clinical Services Director.

In November 2011, Dr. Sutton left the ACT Center. To conserve funding, the ACT Center did not hire a new Clinical Services Director, choosing instead to delegate Dr. Sutton's former responsibilities to the new position of Senior Tobacco Treatment Specialist. The position served as an advancement opportunity for any tobacco treatment specialists who had achieved five years of experience and possessed the capacity to take on additional responsibilities.

Human Resources determined that only two tobacco treatment specialists met the five-year requirement, Robert Lock and Anthony Davis. Lock and Davis, both black males, had each served as tobacco treatment specialists at the ACT Center for over seven years while Roy had served as a tobacco treatment specialist for just over three and a half years. Because only Lock and Davis met the minimum requirements, Human Resources did not post the position publicly. Instead, Human Resources simply reclassified Lock and Davis as Senior Tobacco Treatment Specialists using job description questionnaires ("JDQs"). The JDQs are computer generated forms that summarized the duties of Senior Tobacco Treatment Specialists. Populating some fields on the JDQs required selecting options from predetermined drop-down lists. The JDQs created for Lock and Davis specify that the Senior

2

No. 16-60588

Tobacco Treatment Specialist position requires "Health Services – 5 years of experience." This selection was dictated by a predetermined drop-down list.

On June 4, 2012, Roy filed an EEOC complaint, alleging that male therapists were treated more favorably than female therapists with regard to conditions of employment and promotions. Earlier in 2012, the ACT Center had learned that it would face a $400,000 cut in funding—over 20 percent of its budget. Dr. Crews told Roy that she "would do everything in [her] power to keep the main site from being affected" by the funding cut. Roy interpreted this as an assurance that she would not be fired.

Responding to the budget cut, Human Resources directed the ACT Center in implementing a reduction in force ("RIF") plan. Human Resources finalized the plan and submitted it to UMMC's Employee Relations Director on May 30, 2012. The plan was approved on June 5, 2012. The employees terminated in the RIF were selected according to UMMC's last in, first out policy. Roy and Demetria Hudson, another tobacco treatment specialist, had fewer years of cumulative experience than Lock and Davis possessed. Roy and Hudson were terminated, but Lock and Davis were not. The ACT Center officially terminated Roy's position on June 8, 2012.

In April 2013, Roy applied for a Patient Advocate position with UMMC. The position was open only to current employees and those recently terminated through a RIF. There were 39 qualified applications for the position. UMMC had a written policy that "first consideration" should be given to recently terminated employees. But Dana Phelps, the Director of the Department of Patient Affairs who was responsible for hiring the new Patient Advocate, did not know about this policy. Phelps was also unaware of Roy's EEOC complaint, and she was not provided with the race or gender of the applicants. On the basis of paper applications, Phelps interviewed the four applicants she believed to be most qualified: two black females, a white female, and a white male. She

3

ultimately hired the white male, Alan Boteler, in part because he was bilingual and could effectively serve UMMC's growing number of Spanish-speaking patients.

Roy sued UMMC, asserting claims of race and gender discrimination based on UMMC's failure to promote and failure to rehire her. Roy also alleged that UMMC violated Title VII by firing her in retaliation for her EEOC complaint. The district court granted the defendant's motion for summary judgment, dismissing all claims. Roy timely appealed.

## STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment *de novo*. *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). Summary judgment is granted when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also* Fed. R. Civ. P. 56(a). This court may affirm a grant of summary judgment on any grounds supported by the record and argued in the district court. *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 378 (5th Cir. 2016).

## DISCUSSION

### I.      Failure to Promote

To prove intentional discrimination, Roy must first establish a prima facie case. She can do so by showing that (1) she was within a protected class, (2) she was qualified for the position she sought, (3) she was not promoted, and (4) UMMC continued to seek applicants with her qualifications. *McMullin v. Miss. Dep't of Pub. Safety*, 782 F.3d 251, 258 (5th Cir. 2015). The district court granted summary judgment to UMMC because Roy failed to establish the second element of her prima facie case: she was not qualified for the position she sought.

Roy must meet all objective qualifications to establish a prima facie case. *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 681 (5th Cir. 2001). According

No. 16-60588

to UMMC, the Senior Tobacco Treatment Specialist position required five years of experience as a tobacco treatment specialist. Roy admits she did not meet that requirement. She argues, however, that the Senior Tobacco Treatment Specialist position did not actually require experience *as a tobacco treatment specialist*—any health services experience would suffice.

To support this position, Roy relies entirely on the JDQs that were created for Lock and Davis. This reliance is misplaced. Although the JDQs identify "Health Services" as the requisite experience, this selection was dictated by a pre-determined drop-down list. Roy provides no evidence that UMMC could actually have selected "Tobacco Treatment Specialist" from the drop-down list. Instead, she suggests that UMMC should have supplemented the JDQs to clarify the experience requirement. Roy does not explain where on the JDQs UMMC could have provided that additional information. Nor does she explain why UMMC would have needed to do so. The JDQs were not posted publicly. They merely served to reclassify Lock and Davis and specify their additional duties. When the JDQs were finalized, Human Resources had already determined that Lock and Davis met the requirements for promotion. An addendum clarifying the experience requirement would have been unnecessary.

Testimony from those who developed the Senior Tobacco Treatment Specialist position confirms that Roy was not qualified. According to Dr. Payne, only Lock and Davis met the minimum requirements: "Had Stacey Roy also had the minimum qualifications, she too would have been considered for promotion." Likewise, the Director of Human Resources, Molly Brasfield, confirmed that "there were only two people in the department that met the minimum qualifications." Payne and Brasfield defined the objective requirements for the position of Senior Tobacco Treatment Specialist. Roy's position intimates that Payne and Brasfield did not understand the

5

No. 16-60588

qualifications for the position they themselves created.  Aside from the JDQs, Roy identifies nothing on the record that supports this assumption.

Thus, even viewing the record in the light most favorable to Roy, a rational jury could not infer that she was objectively qualified for the position she sought.

## II.    Retaliation

To establish a prima facie case of retaliation, Roy must show (1) she engaged in activity protected under Title VII, (2) an adverse employment action occurred, and (3) there was a causal connection between her protected activity and the adverse employment decision.  *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992).  The burden then shifts to UMMC to produce a legitimate, non-retaliatory reason for its action.  *Id.*  If UMMC meets this burden, Roy must establish that this reason is pretextual and that her protected activity was a but-for cause of her termination.  *Id.*

The district court concluded that Roy established her prima facie case: (1) Roy engaged in protected activity by filing a complaint with the EEOC, (2) termination is an adverse employment decision, and (3) the temporal proximity between her termination and her complaint suggests causation.  The district court also determined that UMMC's budget-induced RIF constitutes a legitimate, non-retaliatory reason for Roy's termination.  Finally, the district court found that Roy had failed to create a genuine fact dispute as to whether retaliation was a but-for cause of her termination.  On this basis, the district court granted UMMC summary judgment.

To prove causation, Roy relies on Dr. Crews's statement that she would do everything in her power to prevent layoffs at the main site.  This statement occurred before Roy filed the EEOC complaint.  Four days after she filed the complaint, Roy was terminated.

No. 16-60588

The key to Roy's causation argument is the temporal proximity between her complaint and her termination, but this correlation does not raise an inference of causation. The RIF plan that terminated Roy was finalized and submitted on May 30, 2012—four days before Roy filed her EEOC complaint. Because the plan terminating Roy was finalized and submitted before her complaint, a rational jury could not infer that the complaint was a but-for cause of her termination.

## III.   Failure to Hire

For Roy to prove that UMMC's failure to hire her as a Patient Advocate was motivated by race or gender discrimination, she must first establish her prima facie case. This requires showing that (1) she was within a protected class, (2) she applied and was qualified for the position she sought, (3) she was not hired, and (4) UMMC continued to seek applicants with her qualifications. *McMullin*, 782 F.3d at 258. If Roy succeeds, UMMC must produce a legitimate, nondiscriminatory reason for failing to hire her, and Roy must prove that reason is pretextual. *Id.* UMMC concedes that Roy made out a prima facie case, but identifies Alan Boteler's superior application as its legitimate, nondiscriminatory reason for rejecting Roy. The district court granted summary judgment for UMMC after finding that Roy had failed to create a genuine issue of material fact on her claim of pretext.

To begin with, it is undisputed that Dana Phelps, the woman who hired the new Patient Advocate, did not know Roy's race. The paper applications that Phelps reviewed were race blind. On the basis of these applications, Phelps chose to interview the four most qualified candidates, and Roy was not among them. Since Phelps did not know Roy's race, her failure to hire Roy could not have stemmed from racial animus.

Roy also presents no evidence that gender discrimination was the real reason she was not hired. Her pretext argument relies on an internal UMMC

7

policy that gives "[f]irst consideration" to employees laid off in a RIF.  Phelps testified that she was unaware of this policy.  Although the policy does not guarantee rehiring and Roy was in fact considered for the position, she argues that Phelps's ignorance of the policy creates a genuine issue of material fact as to whether UMMC's stated reason for rejecting her application was pretextual.

This court has stated that a Title VII employer's "failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other non-minority employees." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007).  Roy proposes that her other allegations of race and gender discrimination suffice to show that she was "treated differently."  Yet she has introduced no evidence suggesting that UMMC adhered to its rehiring policy differently in cases involving non-minority employees.  Phelps did not selectively apply the policy; she was unaware of its existence.  Thus, the policy violation does not serve to establish pretext for gender discrimination.  *See id.*

## CONCLUSION

The judgment of the district court is **AFFIRMED**.