# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-60489
Summary Calendar

United States Court of Appeals
Fifth Circuit
**FILED**
January 15, 2018
Lyle W. Cayce
Clerk

JACKLON HAYWOOD,

      Plaintiff - Appellant

v.

MISSISSIPPI DEPARTMENT OF CORRECTIONS,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:16-CV-81

Before STEWART, Chief Judge, and DENNIS and HAYNES, Circuit Judges.

PER CURIAM:*

      Plaintiff-Appellant Jacklon Haywood ("Haywood") appeals the district court's summary judgment dismissal of her race and sex discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. against Defendant-Appellee Mississippi Department of Corrections ("MDOC"). For the following reasons, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60489

## I.     BACKGROUND AND PROCEDURAL HISTORY

Haywood, a black female, began her employment with MDOC as a Corrections Officer in 1985. Over the course of her career with MDOC, Haywood received several promotions and was employed as a Probation and Parole Agent when she applied for an open Correctional Field Officer Supervisor position in January 2013. Haywood was interviewed for the position by a panel of three supervisors, including Kenneth Fox ("Fox"), but was not selected. Following the panel's choice to install Mike Perrigan, a white male, as the new Correctional Field Officer Supervisor, Haywood filed a charge of discrimination with the EEOC on March 15, 2013. The EEOC issued a right-to-sue letter on August 6, 2014, but Haywood did not file a lawsuit at that time.

In June 2014, MDOC announced that it was again seeking applicants for the Correctional Field Officer Supervisor position. Haywood submitted an application to the Mississippi State Personnel Board, which then forwarded those applications to the MDOC's personnel office to schedule interviews. All persons who applied for the position and met the experience and educational requirements for the position were interviewed as a matter of course. MDOC sent an interview notice to Haywood scheduling her interview for September 12, 2014. Because of a scheduling discrepancy, MDOC rescheduled Haywood's interview for the morning of September 19, 2014.[1] Haywood was interviewed by a panel of interviewers selected by Lee McTeer ("McTeer"), a white male, all of whom were at the same or a higher supervisory level as McTeer. The panel consisted of McTeer, Christy Gutherz ("Gutherz"), a white female, Kenneth

---

[1] Haywood's interview was initially schedule for later in the day, but because of a personal scheduling conflict, her interview was moved up to earlier in the day.

2

No. 17-60489

Valentine ("Valentine"), a white male, and a fourth unidentified person who, according to Haywood, was a black male.[2]

The interview process followed MDOC's standard procedure. All qualified applicants were asked a series of predetermined questions and were assigned a point value based on their responses. At the end of each interview, the interview panel reviewed each candidate's responses and a mutual score was determined by the core interviewers. The numeric score assigned to each question was tallied and an overall total was assigned to each candidate. The interview panel interviewed six applicants for the position: Greg Avant, a white male; Chandra Bonner, a black female; Jean Hooper, a black female; Chad Smith, a black male; Nay Trotter, a white female; and Haywood. It is undisputed that Greg Avant had the highest composite interview score of 46, and Haywood had the lowest composite interview score of 26.[3] Based on his interview score, Avant was recommended for promotion. On November 14, 2014, Kenneth Fox sent an email to all persons previously interviewed for the Correctional Field Officer Supervisor position, notifying them that, according to McTeer, they would all need to re-interview for the position and would have to submit a letter of interest to receive that interview. Haywood submitted a letter to McTeer that same day expressing her interest in being re-interviewed. However, no applicants were re-interviewed, and on December 22, 2014, Avant was announced as the recipient of the promotion to Correctional Field Officer Supervisor in a staff-wide email.

---

[2] In her deposition, Haywood testified that she was unsure whether Valentine served on the interview panel, but was sure that at least one of the panel members was black. McTeer testified that the panel consisted of himself, Gutherz, and Jay Mallette, a black male. Although the ultimate composition of the panel is disputed, it is undisputed that the panel consisted of at least one black male and one female.

[3] Record evidence demonstrates that Bonner scored 35 points, Smith scored 31 points, Hooper scored 29 points, and Trotter scored 28 points.

3

No. 17-60489

On February 20, 2015, Haywood filed a charge of discrimination with the EEOC, alleging that she was not promoted because of her race, age and sex, and because she previously filed a charge of discrimination with the EEOC. After 180 days without a determination from the EEOC, Haywood requested and received a right-to-sue letter on October 23, 2015. She subsequently filed suit against MDOC and McTeer in the Circuit Court of Leflore County, Mississippi, on January 6, 2016. In her petition, Haywood alleged that she was subjected to employment discrimination based on her race, sex, and age in violation of Title VII. Haywood also brought a negligence claim under Mississippi state law and asserted that MDOC and McTeer maintained a "pattern and practice of discrimination on the basis of race, sex and age against black females." MDOC and McTeer removed Haywood's case to federal court, and McTeer filed a motion to dismiss. The district court dismissed McTeer, and MDOC filed a motion for summary judgment, arguing, *inter alia*, that Haywood could not rebut MDOC's offered legitimate, non-discriminatory reason for promoting Avant.[4] Haywood responded, arguing that (1) she was more qualified than Avant, (2) contrary to what she believed were MDOC's assertions, the interview panel considered "other factors" in addition to the cumulative interview score when assessing whether to hire a candidate, and (3) there are "scratch outs and corrections" on the interview scoring sheets indicating that the scores were fabricated. The district court granted summary judgment in favor of MDOC and dismissed all of Haywood's claims. This appeal followed.

---

[4] MDOC also raised other grounds for dismissal of Haywood's negligence and "pattern and practice" claims, none of which were addressed by Haywood in her response to MDOC's motion for summary judgment. The district court dismissed these claims based on Haywood's failure to address them in her response, and Haywood does not raise them on appeal. Accordingly, this opinion is limited to Haywood's Title VII claim.

No. 17-60489

## II.     DISCUSSION

We review a district court's grant of summary judgment de novo, viewing all facts and drawing all inferences in a light most favorable to the non-moving party. *Alkhawaldeh v. Dow Chemical Co.*, 851 F.3d 422, 425–26 (5th Cir. 2017). Summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On appeal, this court may affirm a grant of summary judgment on any grounds supported by the record and argued in the district court. *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 378 (5th Cir. 2016).

A Title VII discrimination claim based on circumstantial evidence is analyzed using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). To survive summary judgment, a plaintiff must first present a prima facie case of discrimination. *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015). Once a plaintiff establishes a prima facie case, a presumption of discrimination is established. *Id.* A burden of production then is placed on the employer "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (quotation marks omitted). If the employer meets this burden, the presumption of discrimination disappears and the burden shifts back to the plaintiff to establish that the employer's proffered reason is pretextual. *Id.* In contrast to the minimal burden that a plaintiff bears when establishing his prima facie case, a plaintiff must produce "substantial evidence of pretext." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402–03 (5th Cir. 2001). "Our job as a reviewing court conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions." *LeMaire v. La. Dep't. of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007). An employee's showing that he was "clearly

5

better qualified is enough to prove that [his] employer's proffered reasons are pretextual." *Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002) (citations omitted).

The parties do not dispute that Haywood has presented a prima facie case of discrimination: she is a black female who applied for and qualified for the position at issue but was not promoted because MDOC promoted Avant, a white male. *See Williams-Boldware v. Denton Cnty., Tex.*, 741 F.3d 635, 643 (5th Cir. 2014), *cert denied*, — U.S. —, 135 S. Ct. 106, 190 L. Ed. 2d 41 (2014). In response, MDOC offers that Avant was promoted over Haywood because he received the highest ranking by the interview panel "after considering the applications and interviews of all applicants." "An employer's subjective reason for not [promoting] a candidate, such as a subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection" so long as the employer "articulates a clear and reasonably specific basis for its subjective assessment." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 616 (5th Cir. 2007) (citations omitted). MDOC identifies the score sheets completed by the interview panelists during each applicant's interview, all of which indicate that Avant had the highest score and Haywood had the lowest, as the specific reason for Avant's promotion. Because MDOC has provided some evidence demonstrating how it scored all applicants, MDOC has offered a "clear and reasonably specific" legitimate reason for promoting Avant over Haywood. *See Martinez v. Tex. Workforce Comm'n – Civil Rights Div.*, 775 F.3d 685, 688 (5th Cir. 2014) (holding that interview scores, where the employer provided evidence demonstrating how it scored applicants in the interview process, was a legitimate, non-discriminatory reason for its hiring decision); *cf. Alvarado*, 492 F.3d at 617 (finding that there was no evidence as to how the interviewers arrived at their interview scores).

Haywood does not dispute that she received the lowest cumulative score of all candidates interviewed, but instead challenges the neutrality of the interview process. That is, Haywood attempts to rebut MDOC's reason by pointing to the allegedly conflicting deposition testimony of Fox and McTeer in response to questions about the interviewing process. When questioned about what factors are considered when selecting someone for promotion, McTeer testified that he relied primarily on any given applicant's interview performance, noting that it was the "majority" of what he considered when selecting a candidate for promotion. This testimony, according to Haywood, conflicts with that of Fox (who was not on the selection panel for the position she sought), who testified that he considered the "highest score and all of the other stuff that comes in" when assessing whether to hire or promote a candidate. Notwithstanding Haywood's contentions to the contrary, McTeer's testimony is in accord with that of Fox: when interviewing a job candidate, the interview panel relies primarily on the interview score and may give weight to other considerations when relevant.

Haywood also questions the authenticity of the interview scoring sheets, arguing that they contain "scratches and corrections" that give her a lower point total. The interview forms require interviewers to fill in interviewees' responses by hand, and interviewers assign a point total to each response. This method of completing interview forms will necessarily produce "scratches and corrections," and record evidence demonstrates that none of the scratches affected the overall interview score of any applicant in a meaningful way.

Haywood next argues that she was "far more qualified" than Avant for the Corrections Field Officer Supervisor position. Specifically, she argues that while she has a high school diploma, college degree, and twenty-nine years of experience, Avant only has a high school diploma and fourteen years of experience with MDOC in addition to five years of related service with another

state agency.[5] Although Haywood's showing that she was "clearly better qualified" would be enough to prove that MDOC's proffered reason is pretextual, *Price*, 283 F.3d at 723, merely demonstrating that she has "better education, work experience, and longer tenure with [MDOC] [does] not establish that [she] is clearly better qualified." *Id.* (citing *Nichols v. Lewis Grocer*, 138 F.3d 563, 568–69 (5th Cir. 1998) (holding that losing applicant's longer tenure with the company did not make her "clearly better qualified" than the winning applicant). Thus, although Haywood's qualifications are sufficient to satisfy the educational and experience requirements of the position she sought, they do not "leap from the record" when contrasted with Avant's experience. *Price*, 283 F.3d at 723.

Haywood further attacks the integrity of the interview process by pointing to McTeer's deposition testimony, in which he stated that he "possibly" uses "racist and sexist slurs" outside of work. Haywood argues that given this testimony, it is clear that McTeer could not—and did not—check any racist and sexist animus at the door when he conducted interviews, and that this animus tainted the interview process. However, McTeer's testimony—in which he responds "possibly" to the question of whether he uses racist or sexist slurs at home—is equivocal at best, and Haywood does not make the connection between McTeer's testimony and her interview. Haywood otherwise fails to present any evidence from which a jury could infer that the interview process—which involved interview panel members other than McTeer—was tainted with discriminatory animus.

---

[5] Haywood does not challenge that Avant meets the minimum educational and experience requirements for the position, which accepts applications from employees who graduated "from a standard four (4) year high school[] . . . AND . . . had [n]ine years of work related (sic) experience," two of those being as a Corrections Field Officer.

Finally, Haywood argues that because she requested a second interview and did not receive one, this case presents the exact same facts as those in *McMullin v. Mississippi Department of Public Safety*, 782 F.3d 251 (5th Cir. 2015), and therefore requires reversal. In *McMullin*, the plaintiff, a white female, repeatedly requested interviews for a promotional position but was both denied an interview and looked over for the position in favor of a black male. *Id*. In holding that a fact issue existed as to whether her application was intentionally ignored, this court identified several facts—including that the plaintiff requested an interview but the interviewer set her request aside and failed to notify her when applications were being accepted and interviews were being conducted—which indicated a "fumbling, bumbling case of determined efforts to deny [the plaintiff] a promotion." *Id*. at 252. Here, Haywood offers no such proof, as she presents no evidence that second interviews were conducted for any candidate. Haywood's reliance on *McMullin* is inapposite.

Haywood has failed to offer any evidence, let alone "substantial evidence," to demonstrate MDOC's offered reason for promoting Avant was pretextual or that its selection process was tainted by discriminatory animus. *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402–03 (5th Cir. 2001). Having failed to carry her burden of demonstrating pretext, we hold that Haywood's claims were properly dismissed.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.