# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 9, 2024

Lyle W. Cayce
Clerk

No. 23-60246

Quincy D. Taylor,

*Plaintiff—Appellant*,

*versus*

University of Mississippi Medical Center,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:19-CV-331

_____

Before Elrod, Willett, and Duncan, *Circuit Judges*.

Per Curiam:*

Plaintiff Quincy Taylor appeals the grant of summary judgment dismissing his employment-related claims against his former employer, the University of Mississippi Medical Center ("UMMC"). We AFFIRM.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-60246

I.

Taylor, a black man, had worked in UMMC's IT department since 2012, specifically as a Field Support Specialist Associate since 2016. He was supervised by Stephen Parnell and Russell Donald.

In 2018, Taylor applied for a promotion to Field Support Specialist Intermediate. A hiring panel interviewed each qualified candidate and recommended the most qualified to Donald, UMMC's Director of Field Services. Marcella Fleming, a black woman, was promoted instead of Taylor. Fleming had worked at UMMC since 2015, specifically as an End User Computer Specialist Intermediate since 2016. She had a bachelor's degree in Computer Networking and Information Technology, while Taylor only had an associate's degree in Network Engineering. The panel and Donald based their decision on Fleming's exemplary work performance at UMMC, favorable interview, educational background, and experience.

After being passed over, Taylor resigned in protest. In his resignation email on April 4, 2018, Taylor said his last day would be April 27, 2018. About a week before his designated last day, Taylor emailed Parnell to ask what factors went into Fleming's selection. Taylor also complained about his workload and how he had not advanced as quickly as others at UMMC. He aired similar grievances in person with Parnell on April 16, 2018. After this meeting, Taylor asked to rescind his resignation. But Donald and other IT department leadership decided to accept Taylor's resignation because they viewed it as "impulsive and an attempt to negotiate [his] current position."

After exhausting his administrative remedies,[1] Taylor sued UMMC. Relevant to this appeal, he brought claims under the Rehabilitation Act of

---

[1] Even though Taylor technically failed to check the "retaliation" box in his EEOC charge, his retaliation claim could still "reasonably be expected to grow out of" his initial

1973, 29 U.S.C. § 794, for retaliation, harassment, hostile work environment, and failure to accommodate. He also brought claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, for sex, race, and color discrimination based on failure to promote. The district court granted UMMC summary judgment on all claims. Taylor now appeals the dismissal of his claims for failure to accommodate, retaliation, and failure to promote.

## II.

We review a summary judgment *de novo*. *Patel v. Tex. Tech. Univ.*, 941 F.3d 743, 747 (5th Cir. 2019). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This court may affirm the district court's grant of summary judgment on any ground supported by the record and presented to the district court." *Salinas v. R.A. Rogers, Inc.*, 952 F.3d 680, 682 (5th Cir. 2020).

## III.

## A.

We first consider whether the district court erred in dismissing Taylor's claim that UMMC failed to reasonably accommodate his disability under the Rehabilitation Act.

To show failure-to-accommodate, Taylor had to prove (1) he was "a qualified individual with a disability," (2) UMMC knew about "the disability and its consequential limitations," and (3) UMMC "failed to make reasonable accommodations." *Sligh v. City of Conroe*, 87 F.4th 290, 304 (5th

---

charge of discrimination and thus be up for consideration now. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).

Cir. 2023) (per curiam) (citation omitted). The district court granted summary judgment because Taylor failed to meet the second element. At that step, an employer is obligated to "engage in an interactive process . . . to find the best means of accommodating [a] disability" if the employee first specifically identifies "the disability and resulting limitations, and . . . [suggests] reasonable accommodations." *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009) (internal quotation marks and citations omitted). If the plaintiff is not direct and specific in his request, then "he can prevail only by showing that the disability, resulting limitation, and necessary reasonable accommodation were open, obvious, and apparent to the [employer's] relevant agents." *Sligh*, 87 F.4th at 304 (internal quotation marks and citation omitted).

Taylor argues he met the second element because his supervisors knew his workload exacerbated his depression, anxiety, and insomnia, yet they failed to engage with him to determine a reasonable accommodation to lighten his workload. Taylor first informed UMMC about his disability in his 2012 employment application, in which he stated he was "being treated for depression." In 2014, Taylor emailed Donald about suggestions to reduce his workload, complaining about how mentally and physically exhausting it was to provide "ongoing [IT] support" to "multiple departments." After being passed over for the 2018 promotion, Taylor complained to HR about "mismanagement of personnel and unequal compensation [that] has led to burnout, physically and mentally." In a similar vein, Taylor emailed Parnell in April 2018, saying, "Although no other technician has had this type of [increased] workload, I've done this willingly for the past two years in order to support the mission of [UMMC] while under much stress." He later met with Parnell to "air[] out [his] grievances and told him the reason why [he] was resigning was [because of his] workload." Taylor claims that in that meeting, he also told Parnell that he was receiving treatment for depression.

No. 23-60246

Even assuming UMMC knew about Taylor's depression, however, he never tied this disability directly to suggested accommodations. *See Windham v. Harris County*, 875 F.3d 229, 236 (5th Cir. 2017) ("Mere knowledge of the disability is not enough; the service provider must also have understood the limitations the plaintiff experienced *as a result* of that disability." (cleaned up) (citation omitted)). His 2012 application, for example, did not identify the "consequential limitations" of his depression. *Sligh*, 87 F.4th at 304. Likewise, Taylor's workload grievances to Donald and Parnell did not tie his exhaustion to his depression, nor did Taylor "suggest [any] reasonable accommodation[]" based on that disability. *Chevron Phillips Chem. Co.*, 570 F.3d at 621. Taylor instead met with Parnell in April 2018 to explain why he was resigning, not to request accommodations based on a disability. In fact, Taylor admitted he never expressly told any supervisor that he was disabled and needed a specific accommodation.

Taylor's piecemeal and vague complaints of exhaustion were not "direct and specific" requests sufficient to put UMMC on notice that he requested and suggested reasonable accommodations based on a disability. *See Sligh*, 87 F.4th at 304; *Windham*, 875 F.3d at 236–37. And because Taylor does not argue his disability and necessary accommodations were "open, obvious, and apparent," he cannot prevail on his failure-to-accommodate claim. *Sligh*, 87 F.4th at 304–05.[2]

Accordingly, summary judgment was properly granted on Taylor's failure-to-accommodate claim.

---

[2] Taylor also contends that he can prove disability discrimination for the same reasons he can prove failure to accommodate. We decline to consider this passing argument as it is inadequately briefed. *Davis v. Davis*, 826 F.3d 258, 266 (5th Cir. 2016).

5

No. 23-60246

## B.

We next consider whether the district court erred in dismissing Taylor's retaliation claim.

Both Title VII and the Rehabilitation Act prohibit employers from discriminating "against any individual because such individual has opposed any act or practice made unlawful by th[e] Act[s]." 42 U.S.C. § 12203(a) (Americans with Disabilities Act of 1990 ("ADA")); 29 U.S.C. § 794(d) (incorporating the ADA's retaliation standard for Rehabilitation Act claims); 42 U.S.C. § 2000e-3(a) (Title VII).

Because Taylor cannot point to any direct evidence of retaliation,[3] he must satisfy the *McDonnell Douglas* burden-shifting test. *January v. City of Huntsville*, 74 F.4th 646, 653 (5th Cir. 2023) (analyzing Rehabilitation Act retaliation claim); *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 999–1000 (5th Cir. 2022) (analyzing Title VII retaliation claim). To do so, he must first establish "a *prima facie* case by showing (1) engagement in protected activity, (2) an adverse employment action, and (3) a causal connection between the two." *January*, 74 F.4th at 653. When claiming protected opposition, as Taylor does here, "an employee must at least have referred to conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its discriminatory practices." *Saketkoo*, 31 F.4th at 1000 (citation omitted). Therefore, if Taylor never opposed purported unlawful conduct by UMMC, then he cannot maintain a retaliation claim. *See ibid.*

---

[3] That is, Taylor points to no "evidence which, if believed, proves [retaliation] without inference or presumption." *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993).

No. 23-60246

Taylor offers three instances of protected activity: (1) his resignation for being discriminatorily passed over for a promotion; (2) his grievances to Parnell for being discriminatorily passed over; and (3) his requests for a reasonable accommodation. According to Taylor, summary judgment was improper because we must assume a jury could believe the "timing" of his resignation and grievances "demonstrates a protest against a discriminatory action," and that his "attempt to negotiate his current position" was a request for a reasonable accommodation. We disagree. Taylor's argument overlooks that a dispute of fact is genuine only "if the evidence is sufficient for a *reasonable* jury to return a verdict" in his favor. *Ahders v. SEI Priv. Tr. Co.*, 982 F.3d 312, 315 (5th Cir. 2020) (emphasis added) (citation omitted). No reasonable jury could find in Taylor's favor based on these conclusory arguments supported by no evidence.

First, consider Taylor's resignation and "airing his grievances" in protest for being passed over for the promotion.[4] His resignation letter did not specify why he was resigning, let alone say that his resignation was based on perceived discrimination. His grievances to Parnell simply expressed displeasure for being passed over twice in favor of another candidate, but Taylor never alleged those decisions were discriminatory. He instead asked about "what skills [he] could sharpen to become a better candidate" and "what factors ultimately lead to [the other candidate's] selection." Rather than protesting discriminatory hiring, Taylor lamented his increased workload and that his "hard work and willingness to maintain support for

---

[4] The district court found that "airing his grievances" was sufficient evidence that he engaged in a protected opposition activity, relying on *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 428 n.23 (5th Cir. 2017). The plaintiff in *Alkhawaldeh*, however, presented evidence that his grievances were complaints about *discriminatory* conduct—specifically, "racially insensitive remarks." *See id.* at 428. By contrast, Taylor's grievances to Parnell mentioned no alleged discrimination.

[UMMC's] customers has gone un[n]oticed and unappreciated." Beyond Taylor's conclusory allegation that Fleming received the promotion because she was a "bright skinned female," nothing suggests Taylor complained about discrimination to UMMC. While Taylor later stated at his deposition that his "resignation was, in effect, a protest to the discrimination that [he] felt [he] was facing, to raise a flag to get some attention," no evidence indicates he communicated this belief to UMMC.

Next, consider Taylor's purported request for an accommodation. He points to his April 2018 grievance email and meeting with Parnell as requests for an accommodation. As discussed above, however, these grievances cannot reasonably be perceived as specific requests for an accommodation. *See supra* Part III.A.

Without evidence that Taylor either complained of discrimination or requested an accommodation, nothing suggests he engaged in a protected activity. *See Saketkoo*, 31 F.4th at 1000 (noting evidence of "general . . . hostility is not enough"; "an employee must at least have referred to conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its discriminatory practices" (citation omitted)); *see also Harris-Childs v. Medco Health Sols., Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (per curiam) (finding no protected activity where plaintiff's complaints did not allege that she was treated unfairly based on a protected status).

Accordingly, summary judgment was properly granted on Taylor's retaliation claim.

## C.

Finally, we consider whether the district court erred in dismissing Taylor's Title VII discrimination claim based on UMMC's promotion of Fleming instead of him.

Taylor's failure-to-promote claim must satisfy the *McDonnell Douglas* test. *See Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346–47 (5th Cir. 2013). At the *prima facie* stage, Taylor must show (1) he was a member of a protected class, (2) he sought and was qualified for an open position, (3) he "was rejected for the position," and (4) UMMC either "hired a person outside of [his] protected class or continued to seek applicants with" Taylor's qualifications. *McMullin v. Miss. Dep't of Pub. Safety*, 782 F.3d 251, 258 (5th Cir. 2015). If Taylor makes these showings, then the burden shifts to UMMC to "articulate a legitimate, non-discriminatory reason for its decision not to promote [Taylor]." *Ibid.* If it does, the burden shifts back to Taylor to present evidence that UMMC's reasons for not promoting him were pretextual, *ibid.*—for instance, evidence that he was "clearly better qualified (as opposed to merely better or as qualified) than [Fleming]." *Roberson-King v. La. Workforce Comm'n, Off. of Workforce Dev.*, 904 F.3d 377, 381 (5th Cir. 2018) (internal quotation marks and citation omitted). Taylor may also show that UMMC's "proffered explanation is false or 'unworthy of credence.'" *Ibid.* (citation omitted).

The district court ruled that Taylor's discrimination claims failed at the pretext stage. Specifically, Taylor identified no evidence "demonstrat[ing] that UMMC's reasons for not selecting him for the Field Support Specialist-Intermediate position were pretextual." We agree.

Even assuming Taylor made a *prima facie* case, UMMC provided a legitimate, nondiscriminatory reason for promoting Fleming over Taylor. Donald and the hiring panel thought Fleming was more qualified than Taylor based on her prior exemplary work performance at UMMC, her favorable interview, educational background, and extensive experience. These are legitimate, non-discriminatory reasons for the decision. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (explaining the

burden to present a nondiscriminatory reason "is one of production, not persuasion; it 'can involve no credibility assessment'" (citation omitted)).

Taylor failed to present evidence that these proffered reasons were mere pretext for discrimination. Rather than attack the UMMC's reasons, Taylor instead points to inconsistencies in Fleming's employment application with respect to her years of work experience. He also questions whether Fleming's prior experience was as relevant as his to the Field Support Specialist Intermediate position. These factors, however, do not suggest pretext.

We have repeatedly held that "differences in qualifications between job candidates are generally not probative evidence of discrimination unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Deines v. Tex. Dep't of Protective & Regul. Servs.*, 164 F.3d 277, 279 (5th Cir. 1999); *see also Roberson-King*, 904 F.3d at 381. So, Taylor must point to evidence suggesting he was clearly more qualified than Fleming or that UMMC's proffered reasons for promoting her were clearly unworthy of belief. *Deines*, 164 F.3d at 279. He has not done so. Employers can generally "weigh the qualifications of prospective employees, so long as they are not motivated by [discrimination]." *Roberson-King*, 904 F.3d at 382 (citation omitted). Taylor has not presented any evidence that UMMC chose Fleming over Taylor based on sex, race, or color. Accordingly, summary judgment for UMMC was proper on this claim as well.

## IV.

The district court's judgment is AFFIRMED.